## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-cv-24273-ALTMAN

**STEVEN MACARTHUR-BROOKS**
**ESTATE**, *et al.*,

   *Plaintiffs*,

*v.*

**ALEJANDRO MORENO**,
*et al.*,

   *Defendants*.

_____/

## <u>ORDER REMANDING CASE</u>

  Our Plaintiffs, the Steven MacArthur-Brooks Estate (the "Estate") and the Steven MacArthur-Brooks IRR Trust (the "Trust"), have sued thirteen named Defendants and "Does 1-100" for $2.9 billion. *See* Removed Complaint [ECF No. 1-1] ¶¶ 1–118. Their Complaint includes almost no facts. Instead, it's a gallimaufry of nonsensical legal conclusions—inapposite legal maxims jumbled together with insubstantial claims, seasoned liberally with citations to the Uniform Commercial Code (the "UCC"). Believe it or not, that's all by design.

  "This action," the Plaintiffs tell us, "affects title to the private real property described as a 2018 GMC Sierra 1500[.]" *Id.* ¶ 10. How? It doesn't matter enough for the Plaintiffs to tell us. The Defendants, for their part, say that the claims here "arise from [their] repossession" of the Sierra at some unspecified point in the past. Notice of Removal [ECF No. 1] at 2. They may well be right. We found three references to a car loan in *one* of the voluminous "exhibits" the Plaintiffs attached to their Complaint, Compl. Ex. F at 1–3 (naturally, there's nothing like that in the Complaint itself). But the loan and the repossession don't feature in the Complaint because they're not what this action is really about.

To turn the tables on the Defendants, the Plaintiffs sent them a "Contract and Security Agreement" and several "Commercial Affidavits," all "under the principles of the [UCC]"—in particular, the "principle" that, if the Defendants didn't sufficiently disavow the Agreement and the Affidavits, they'd be deemed to have agreed to them by the doctrine of "**TACIT PROCURATION**." Compl. ¶¶ 15–20, 32 (emphasis in original). As it happens, the Defendants *didn't* disavow the Agreement and Affidavits to the Plaintiffs' satisfaction. So, what did the Defendants "agree" to? Evidently, that the Plaintiffs had fully satisfied their debt to the Defendants by offering them a "Bill of Exchange,"[1] and that, by not accepting the Bill, the Defendants had committed "fraud, embezzlement, fraud [sic], larceny, intensity [sic] theft, conspiracy, deprivation of rights under the color of law, extortion, coercion, injury, and damage," Compl. Ex. E at 4, "in their attempt to collect a fraudulent debt," Compl. Ex. F at 3. The Defendants also "agreed" (the Plaintiffs say) that they'd "considered and accepted a Judgment . . . (in accordance with U.C.C. § 9-509) against [themselves], in the sum amount of" $2.9 billion—the amount supposedly at issue in this case. *Id.* ¶ 17.

This is why the Complaint doesn't bother to allege facts about the repossession, the Defendants' collection conduct, or anything else that might entitle them to relief. To the Plaintiffs, this action is apparently straightforward: All they want to do is enforce the Agreement, and all the necessary facts have been stipulated to in the Affidavits. Each of the Plaintiffs' sixteen counts against the Defendants relies on the Defendants' supposed agreements and admissions—to the exclusion of all other facts. *See generally* Compl.

---

[1] This "Bill of Exchange" somehow connects to the Plaintiffs' "private Two Hundred Billion Dollar [sic] . . . Master Discharge and Indemnity Bond[,]" held with the Federal Reserve. Compl. ¶ 23. The bond, we are told, "expressly stipulates [that] it is 'insuring, underwriting, indemnifying, discharging, paying[,] and satisfying all account holders and accounts dollar for dollar against any and all pre-existing, current, and future . . . debts.'" *Ibid.*

Because eleven of these counts nominally arise under federal law, the Defendants removed this case to us under our federal-question jurisdiction, *see* Notice of Removal ¶ 7, and asked us to compel arbitration, *see* Motion to Compel Arbitration [ECF No. 4]. But *nine* of those federal-law counts are premised on federal *criminal* statutes that create no private right of action at all—so *they* can't sustain our subject-matter jurisdiction over this case. And the remaining two federal-law counts are so frivolous and insubstantial that we don't think they raise a federal question. Since there's no true federal question before us, we remand this case to state court.[2]

## I.   Nine of the Plaintiffs' Federal "Claims" Arise Under Criminal Statutes That Create No Private Cause of Action

"Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists to hear a case, and dismissal is warranted if a court determines that it lacks jurisdiction." *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1357 (11th Cir. 2016) (citing *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008)). "The question whether a federal statute creates a claim for relief is not [itself] jurisdictional." *N.W. Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355, 365 (1994). Nevertheless, "in cases involving . . . federal statutes that . . . don't offer private causes of action, district courts have regularly . . . remanded for lack of federal-question jurisdiction." *A.G. v. Riverside Christian Ministries, Inc.*, 2023 WL 6443118, at *6 (S.D. Fla. Oct. 3, 2023) (Altman, J.) (collecting cases).

---

[2] According to the Motion to Compel Arbitration, the arbitration provision the Defendants hope to apply "shall be governed by the Federal Arbitration Act." Mot. at 4. But "courts have long held . . . that the FAA does not confer subject matter jurisdiction on federal courts." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). "Instead, federal courts must have an independent jurisdictional basis to entertain cases arising under the FAA," *ibid.*—and we don't. Since "[f]ederal courts and state courts have concurrent jurisdiction to enforce the FAA," *ibid.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 & n.32 (1983)), remanding this case to state court won't deprive the Defendants of the benefit of this arbitration provision.

### a. The Standard

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). Rather, the statute must *create* a cause of action, explicitly or implicitly. A statute *explicitly* creates a cause of action when the text of that statute specifically authorizes a plaintiff to sue under that statute in federal court. Whether a statute *implicitly* creates a cause of action, though, depends on whether the statute "displays [Congress's] intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). In undertaking this analysis, we must assess Congress's intentions because "private rights of action to enforce federal law must be created by Congress." *Ibid.*

Whether the statute evinces the intent to create a cause of action is a "question of statutory interpretation" to be answered by reference to the statute's text and structure. *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002) (Marcus, J.) (citing *Sandoval*, 532 U.S. at 286–87).[3] "[F]irst and foremost," a court should look to the "statutory text" for "rights-creating language," which is language that "explicitly confer[s] a right directly on a class of persons [including] the plaintiff." *Ibid.* (quoting *Cannon*, 441 U.S. at 690–93). When a statute confers some right on some class, a court may infer that the members of that class have a private cause of action to vindicate that right. *See ibid.* ("[R]ight- or duty-creating language . . . [is] the most accurate indicator of the propriety of implication of a cause of action."). By contrast, "[s]tatutes that focus *on the person regulated* rather than the individuals protected" by the right "create '*no* implication of [Congress's] intent'" to create a private cause of action. *Sandoval*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981) (emphasis

---

[3] "Since the late 1970s, the Supreme Court has gradually [come to] focus[ ] exclusively on legislative intent as the touchstone of [the private-cause-of-action] analysis," and it has "clearly delimit[ed]" the text and structure of the statute as most "relevant to [the] search for legislative intent." *Love*, 310 F.3d at 1352.

added)). After evaluating the statute's text, a court should consider the statute's "structure," asking whether the law contains a "discernible [non-private] enforcement mechanism." *Love*, 310 F.3d at 1353, 1355 (evaluating a statute that created an "administrative [agency] enforcement regime"). If it does, then "*Sandoval* teaches that we ought not imply a private right of action." *Ibid.* (citing *Sandoval*, 532 U.S. at 290).[4] After all, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Ibid.*

**b. Application**

Except for the RICO statute cited in Count 10, the various statutes the Plaintiffs rely on create no private causes of action at all. These are, after all, criminal statutes, and "[the Eleventh Circuit] has concluded that criminal statutes do not provide for private civil causes of action[.]" *Smith* v. *JP Morgan Chase*, 837 F. App'x 769, 770 (11th Cir. 2021). "Customarily," the "statutory language . . . found in criminal statutes . . . provides 'far less reason to infer a private remedy in favor of individual persons.'" *Love*, 310 F.3d at 1353 (quoting *Cannon*, 441 U.S. at 690–93). That's because many criminal statutes, including all those the Plaintiffs have asserted, are so-called "bare criminal statutes"—statutes whose text and structure include "absolutely no indication that civil enforcement of any kind was available to anyone." *Cort v. Ash*, 422 U.S. 66, 80 (1975) (declining to find a private cause of action in 18 U.S.C. § 610); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (explaining that "this Court has *rarely* implied a private right of action under a criminal statute" and observing that it has *never* done so

---

[4] If a court cannot "conclusively resolve[ ]" the existence of a private right of action based solely on the statute's text and structure, then—and only then—may it consider "legislative history and context." *Love*, 310 F.3d at 1353. It must do this "with a skeptical eye, however, because '[t]he bar for showing legislative intent is high,'" and because "the legislative history of a statute that is itself unclear about whether a private right of action is implied is unlikely to provide much useful guidance." *Ibid.* (first quoting *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002), and then quoting *Cannon*, 441 U.S. at 694). In our case, the federal criminal statutes the Plaintiffs rely on plainly create no private rights of action, so we needn't (and won't) turn to those statutes' legislative histories.

without "a *statutory basis* for inferring that a civil cause of action of some sort lay in favor of someone" (emphasis added)).

None of the statutes the Plaintiffs have cited include language authorizing any private plaintiff to sue, so they don't create private causes of action *explicitly*. And each of these statutes *both* textually "focuses on the person regulated" *and* structurally contemplates government enforcement—so, they don't create a private cause of action *implicitly* either. *See Sandoval*, 532 U.S. at 289. We'll use the federal conspiracy-against-rights statute, invoked in Plaintiffs' Count 6, to illustrate what we mean:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
>
> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—
>
> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241; *see* Compl. ¶ 65. The statute plainly focuses on the conduct of the "two or more persons" who perform the acts regulated by the statute. It doesn't announce a right of any kind for any class of persons. That means the statute's *text* "create[s] no implication" of a private cause of action. *Sandoval*, 532 U.S. at 289. The statute also contemplates a readily "discernable enforcement mechanism"—a fine or a term of imprisonment—both of which are criminal penalties that can be imposed *only* through action by a government enforcer (a prosecutor). That the statute supplies a specific, restrictive, non-private enforcement mechanism "strongly undermines the suggestion that Congress also intended to create by implication a private right of action . . . but declined to say so

expressly." *Love*, 310 F.3d at 1357. We thus cannot imply a private cause of action in the statute's *structure* either. *See Sandoval*, 532 U.S. at 289–90 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others. Sometimes the suggestion is so strong that it precludes a finding of congressional intent to create a private right of action[.]"). Since it's clear from both the text and the structure of § 241 that it wasn't meant to create a private cause of action, we won't infer one now. *Accord Perkins v. Fla. Hwy. Safety*, 2024 WL 3927015, at *2 (M.D. Fla. July 23, 2024) (Irick, Mag. J) (collecting cases and holding that "18 U.S.C. § 241 does not give rise to a private cause of action, as it is a criminal statute"), *report and recommendation adopted*, 2024 WL 3917604 (M.D. Fla. Aug. 22, 2024) (Mendoza, J.).

Our analysis of § 241 applies equally to every other Title 18 section the Plaintiffs have invoked (again, with one exception). No part of Title 18 explicitly or implicitly creates a private cause of action in any of the sections the Plaintiffs have cited. And each section does nothing but prescribe fines and imprisonment against "whoever" violates it. For instance, Counts 1 and 8 purport to assert claims under 18 U.S.C. § 1341. *See* Compl. ¶¶ 48, 75. But that section prescribes fines and imprisonment for "whoever" uses the mail to commit fraud. Because this section doesn't confer any rights on any class of persons, it doesn't create a private cause of action. *See Thomson v. Virgo*, 2021 WL 10410919, at *1 (M.D. Fla. June 3, 2021) (Scriven, J.) (collecting cases and holding that 18 U.S.C. § 1341 "provide[s] *criminal* penalties and do[es] not create a private right of action under which Plaintiff can pursue any claims").

Similarly, Count 3 invokes 18 U.S.C. § 656, *see* Compl. ¶ 54, which criminalizes theft or embezzlement by a bank "officer, director, agent, or employee." "Whoever" is subject to this section may be fined up to $1,000,000 and imprisoned up to 30 years. 18 U.S.C. § 656. Because § 656 confers no rights on any class of persons, it doesn't create a private cause of action. *See Bey v. Re/max*, 2023 WL 8778617, at *1 (M.D. Fla. Dec. 19, 2023) (Barber, J.) ("The Court notes that none of [18 U.S.C.

§§ 1025, 656, or 1951] support jurisdiction in this case, and Plaintiff has no private right of action under any of these criminal statutes."); *Welch v. Pen Air Fed. Credit Union*, 2019 WL 4684453, at *8 (S.D. Ala. Sept. 25, 2019) ("Welch also cites 18 U.S.C. §§ 656, 657, and 1344, but those statutes are criminal statutes which do not create a private civil right of action.").[5]

Counts 4 and 8 advance claims under 18 U.S.C. § 1025, *see* Compl. ¶¶ 58, 74, which prescribes fines and imprisonment for "whoever, upon any waters or vessel within the special maritime and territorial jurisdiction of the United States," defrauds anyone else. Again, no part of this section confers any right on any class of persons. So, it doesn't create a private cause of action. *See Re/max*, 2023 WL 8778617, at *1 n.1 ("Plaintiff has no private right of action under any of [18 U.S.C. §§ 1025, 656, or 1951].")." It's also uniquely unsuited to this case, where neither the complaint nor the attached affidavits even mention that anything happened within the "special maritime and territorial jurisdiction of the United States" as that jurisdiction is defined in 18 U.S.C. § 7. *See generally* Compl. Additionally, Count 4 invokes 18 U.S.C. § 1028A, which prescribes fines and imprisonment for "whoever" engages in identity theft. But, since this section doesn't confer any right on any class of persons, it doesn't create a private cause of action. *See Dada v. Andross*, 2023 WL 4846610, at *2 (S.D. Fla. July 28, 2023) (Ruiz, J.) ("Plaintiff's claim under 18 U.S.C. § 1028A is wholly frivolous. This is a federal criminal statute that penalizes '[a]ggravated identity theft,' not a civil statute. This count is therefore without arguable merit either in law or fact and fails to invoke federal question jurisdiction." (internal citations omitted)); *Riga v. Benezette*, 2012 WL 12910269, at *3 (M.D. Fla. July 12, 2012) (Fawsett, J.) ("Nothing

---

[5] Besides, the Complaint doesn't plead anything suggesting that § 656 even applies to any Defendant in this case. The Plaintiffs allege that all the Defendants are either "persons," "individuals," "banks," or "financial institutions" (naturally, without specifying which Defendant fits into which category). Compl. ¶ 4. But they don't allege that any of the Defendants are bank "officers, directors, agents, or employees" within the meaning of the statute. *See generally ibid.*

in section 1028A expressly creates a private right of action, nor has Congress implied that a private right of action exists.").

Count 6 arises under 18 U.S.C. § 241, *see* Compl. ¶ 65, which we used as our introductory example. *Supra* at 6–7. Since no part of that section confers any right on any class of persons, it doesn't create a private cause of action. Separately, based on the Defendants' alleged violation of § 241, the Plaintiffs also try to assert a claim under 42 U.S.C. § 1983, which fails for two reasons. *First*, "Section 1983 does not encompass claims based on statutory violations if . . . Congress has not created enforceable rights in the relevant statutory provisions." *Wehunt v. Ledbetter*, 875 F.2d 1558, 1563 (11th Cir. 1989) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 24–25 (1981)). As we explained, § 241 doesn't create any private cause of action. So, the Plaintiffs can't bring a § 1983 claim for violations of § 241. *Accord Corpus v. Depass*, 2020 WL 4260980, at *2 (M.D. Fla. July 24, 2020) (Steele, J.) ("Because [§§ 241 and 242] confer no right to Plaintiff, he cannot base a § 1983 claim on defendants allegedly violating either." (citing *Maynard v. Williams*, 72 F.3d 848, 852 (11th Cir. 1996))). *Second*, the Complaint doesn't sufficiently plead "that the conduct complained of was committed by a person acting under color of state law[.]." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). The Complaint alleges that the "Defendant[s] act[ed] under color of law" when they "threaten[ed] the sale of Plaintiff's property through fraudulent foreclosure proceedings." Compl. ¶ 66. But the Defendants are all private parties, and "[u]se of the courts by private parties does not constitute an act under color of state law." *Harvey*, 949 F.2d at 1133 (collecting cases and affirming dismissal of § 1983 claim).

Count 7 advances a claim under 18 U.S.C. § 880, *see* Compl. ¶ 69, which prescribes fines and up to three years of imprisonment for "a person who receives, possesses, conceals, or disposes of any money or other property obtained from the commission of any offense under this chapter that is punishable for more than 1 year." No part of this section confers any right on any class of persons. So, it doesn't create a private cause of action. *See, e.g.*, *Johnson v. McCalla, Raymer, Liebert and Pierce, LLC*,

2022 WL 17493717, at *5 (N.D. Ga. Oct. 17, 2022) (dismissing civil count under § 880 because "criminal statutes do not provide a private right of action" (citing *Acevedo v. Cerame*, 156 F. Supp. 3d 1326, 1328-29 (D.N.M. 2015))), *report and recommendation adopted*, 2022 WL 18780967 (N.D. Ga. Nov. 23, 2022).

Count 9 asserts a claim under 18 U.S.C. § 878, *see* Compl. ¶ 77, which prescribes fines and imprisonment for "whoever knowingly and willfully" assaults, imprisons, kills, or kidnaps "a foreign official, official guest, or internationally protected person."[6] No part of this law confers any right on any class of persons. So, it doesn't create a private cause of action. *See, e.g.*, *El v. Kelly*, 2021 WL 218039, at *2 (E.D. Cal. Jan. 21, 2021) (dismissing civil count brought under § 878 because the "[p]laintiff, as a private citizen, has no authority to bring claims under federal statutes" (citing *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006))), *report and recommendation adopted*, 2021 WL 1092660 (E.D. Cal. Mar. 22, 2021); *Tijerina v. Little*, 2024 WL 3104763, at *4 & n.3 (D. Idaho June 24, 2024) (same). The district court's decision in *Tijerina* helpfully aggregates several cases, including two from courts in our Circuit, holding that twelve analogous sections of Title 18 don't create a private cause of action. *Id.* at *4 nn.3–4 (citing cases construing 18 U.S.C. §§ 4, 878, 912, 1001, 1016, 1342, 1514, 1621, 1622, 1661, 2071, and 2076). Additionally, the Plaintiffs don't purport to be foreign officials, official guests,

---

[6] To be precise, § 878 criminalizes violations or threatened violations of 18 U.S.C. §§ 112, 1116, or 1201. Each of these sections prescribes fines and imprisonment for "whoever" violates its substantive proscriptions: § 112 for "whoever" *assaults or imprisons* a foreign official, § 1116 for "whoever" *kills* a foreign official, and § 1201(a)(4) for whoever *kidnaps* a foreign official. Incidentally, none of these statutes creates a private cause of action, either.

or internationally protected persons. *See generally* Compl. ¶ 1 (describing each Plaintiff as "a person, and/or individual . . . and/or a bank . . . and/or a financial institution" (cleaned up)).[7]

Count 11 invokes 18 U.S.C. § 1344, *see* Compl. ¶ 83, which prescribes fines and imprisonment for "whoever" executes or attempts to execute a scheme to defraud a financial institution. Again, no part of this section confers any right on any class of persons. So, it doesn't create a private cause of action. *See, e.g.*, *Monsegue v. Griffith*, 2023 WL 1769218, at *2 (S.D. Ga. Jan. 6, 2023) (agreeing that § 1344 doesn't create a private right of action for civil claims), *report and recommendation adopted*, 2023 WL 1768127 (S.D. Ga. Feb. 3, 2023); *Cleaver v. Depena*, 2021 WL 6137313, at *2 (N.D. Fla. Nov. 22, 2021) (Jones, Mag. J.) ("Plaintiff, as a private citizen, has no private right of action to assert a violation of [§ 1344] the criminal bank fraud statute."), *report and recommendation adopted*, 2021 WL 6135932 (N.D. Fla. Dec. 29, 2021) (Walker, J.); *Thomson*, 2021 WL 10410919, at *1 (same); *Campbell v. M&T Bank*, 2017 WL 1091939, at *6 (W.D. Pa. Mar. 22, 2017) (same and collecting cases).

Finally, Count 12 arises under 18 U.S.C. § 2314, *see* Compl. ¶ 86, which prescribes fines and imprisonment for "whoever [knowingly] transports, transmits, or transfers in interstate or foreign commerce any" goods or money worth more than $5,000. No part of this section confers any right on any class of persons. So, it doesn't create a private cause of action. *See Anthony v. Comcast*, 2024 WL 3740149, at *2 (N.D. Ga. July 2, 2024) ("[T]here is no private right of action under § 2314 — transportation of stolen securities."). *Dodd v. Woods*, 2010 WL 3747007, at *6 (M.D. Fla. Aug. 31, 2010)

---

[7] As best as we can tell, the Plaintiffs based their § 112 claim on a misreading of § 112(c), which gives each of the terms "foreign government," "foreign official," "internationally protected person," "international organization," "national of the United States," and "official guest" "the same meanings *as those provided in section 1116(b) of this title*." § 112(c) (emphasis added). Ignoring the reference to § 1116(b), the Plaintiffs claim that these terms (plus the term "non-citizen national," which doesn't appear in either § 112 or § 1116), "all have the same meaning." Compl. at 40. By this (erroneous) logic, if the Plaintiffs were "nationals of the United States," then they'd also be "foreign officials," etc., such that § 112 applied to them. Of course, the Plaintiffs *don't* claim to be "nationals of the United States" either. *See generally* Compl.

(Porcelli, Mag, J.) ("[I]n any event, § 2314 is a criminal statute that does not provide a private federal right of action."), *report and recommendation adopted*, 2010 WL 3745802 (M.D. Fla. Sept. 21, 2010) (Whittemore, J.).

We therefore conclude that no analogously written (and structured) section of Title 18 can create any private cause of action. *Accord Sandoval*, 532 U.S. at 289–90; *Smith*, 837 F. App'x at 770. That's consistent with what district courts in our Circuit have routinely decided (as we've shown). And it's what the Eleventh Circuit itself said in *Smith*, where the court affirmed a district court's decision declining to find private causes of action in 18 U.S.C. §§ 1001, 1005, 1506, and 1519—each of which follows the textual and structural patterns we've described here.[8] *See Smith*, 837 F. App'x at 770. Likewise, the Eleventh Circuit has refused to infer a private cause of action in 18 U.S.C. § 2261A— another typical Title 18 section that prescribes fines and imprisonment for "whoever" engages in interstate stalking. *Rock v. BAE Sys., Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) ("[H]aving carefully reviewed § 2261A, we cannot find anything in its plain language to indicate that it is more than a 'bare criminal statute.' . . . [T]here is no basis from which we can or should infer a private right of action, and the district court properly dismissed [the plaintiff]'s claim.").[9]

Because the Plaintiffs have no right to sue under the various Title 18 sections they've asserted, Counts 1, 3–4, 6–9, and 11–12 of the Complaint create no federal causes of action and (thus) provide no basis for removal to federal court.

---

[8] Section 1001 prescribes fines and imprisonment for "whoever" knowingly falsifies or conceals a material fact in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States. Section 1005 does the same for any officer, director, agent, or employee of any bank who makes false entries in any book or report with the intent to defraud. Similarly, §§ 1506 and 1519 prescribe fines and imprisonment for anyone who falsifies, conceals, or destroys any record in a judicial proceeding or to impede a federal investigation, respectively.

[9] *See also Anthony v. Comcast*, 2024 WL 3740149, at *2 (N.D. Ga. July 2, 2024) ("Title 18 generally does not create civil liability or a private right of action, and private parties may not maintain suit under most Title 18 provisions.").

## II. The Plaintiffs' Tenth and Eleventh "Federal" Claims Fail to State a Substantial, Non-Frivolous Federal Question

That leaves us with only two "federal-law" counts: Count 5, which alleges that the Defendants violated § 2 of the Sherman Act (15 U.S.C. § 2); and Count 10, which avers that the Defendants violated the Racketeering Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961–68). *See* Compl. ¶¶ 61–62 (Count 5); 79–80 (Count 10). Unlike the Title 18 counts, Counts 5 and 10 sound in statutes that *do* create private causes of action. *See* 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ."); 18 U.S.C. § 1964 ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ."). Still, the claims the Plaintiffs advance in these two counts are so insubstantial and frivolous that they cannot sustain our federal-question jurisdiction.

### a. The Standard

"[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction;' *or* (2) 'such a claim is wholly insubstantial and frivolous.'" *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). "Under the latter *Bell* exception, subject matter jurisdiction is lacking only 'if the claim has no plausible foundation, or if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" *Ibid.* (quoting *Barnett v. Bailey*, 956 F.2d 1036, 1041 (11th Cir. 1992)).

It's true that we tend to give even badly pled "federal" claims the benefit of the doubt. "[T]he category of claims that are 'wholly insubstantial and frivolous' is exceedingly narrow," *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1034 (11th Cir. 2022), and there's a subtle, but "important[,] distinction between the lack of subject matter jurisdiction and the failure to state a claim upon which

relief can be granted," *Sanders*, 138 F.3d at 1352.[10] To respect this distinction, our Circuit has explained

that we must scrutinize *only* the seriousness (or frivolousness) of a claim, not whether "the cause of

action alleged was one on which [the complainant] could actually recover." *Dime Coal Co., Inc. v. Combs*,

796 F.2d 394, 396 (11th Cir. 1986) (quoting *Bell*, 327 U.S. at 682); *see also Southpark Square Ltd. v. City*

*of Jackson*, 565 F.2d 338, 342 (5th Cir. 1977) ("In determining substantiality, we must ask whether there

is any legal substance to the position the plaintiff is presenting[.]" (cleaned up)). The circuit has also

supplied a useful rule of thumb: When a defendant attacks subject-matter jurisdiction by asserting that

the plaintiff has failed to state a claim, the "proper course of action for the district court (assuming

that the plaintiff's federal claim is not immaterial . . . [or] insubstantial or frivolous) is to find that

jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."

*McGinnis v. Ingram Equip. Co., Inc.*, 918 F.2d 1491, 1494 (11th Cir. 1990).

Notwithstanding these various admonitions, though, federal courts routinely dismiss as

frivolous claims sounding in "sovereign citizen" theories, even when the plaintiffs don't identify

themselves as sovereign citizens. *See, e.g.*, *Linge v. State of Ga. Inc.*, 569 F. App'x 895, 896 (11th Cir.

2014) ("The district court did not err in determining that it lacked subject matter jurisdiction over

Linge's [sovereign-citizen] claim [against the State of Georgia for collecting his child-support

debt]. . . . [B]oth we and the district court lack jurisdiction to consider his claim because it is 'wholly

insubstantial and frivolous.'"); *see also Trevino v. Florida*, 687 F. App'x 861, 862 (11th Cir. 2017)

("Trevino's legal arguments, that he must be released because Florida breached a security agreement

---

[10] Like many commentators, we doubt the soundness of this distinction. *Bell*, 327 U.S. at 683 (Black,
J.) ("The accuracy of calling these [frivolousness] dismissals jurisdictional has been questioned.");
*Rosado v. Wyman*, 397 U.S. 397, 404 (1970) (Harlan, J.) ("[T]he view that an insubstantial federal
question does not confer jurisdiction [is] a maxim more ancient than analytically sound.");
13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3564
(3d ed.). But we agree that it's "an established principle of federal jurisdiction and remains the federal
rule" unless the Supreme Court changes it. *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276 (7th
Cir. 1988) (Posner, J.).

with him, are frivolous. . . . In addition, Trevino's factual allegations that he is a party to some sort of secured transaction requiring Florida to release him are clearly baseless."); *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) ("Courts have been confronted repeatedly by [sovereign citizens'] attempts to delay judicial proceedings and have summarily rejected their legal theories as frivolous.").[11]

### b. Application

Here, the Plaintiffs are clearly advancing a "common sovereign citizen theory," which is that Public Law 73-10 and UCC 3-104 entitle them to satisfy, with fake money, a real debt they owe the Defendants. *Larkins v. Montgomery Cnty. Cir. Ct.*, 2020 WL 2744116, at *3 (M.D. Ala. Apr. 21, 2020), *report and recommendation adopted*, 2020 WL 2739821 (M.D. Ala. May 26, 2020) ("Although Plaintiff in this case does not specifically identify himself as a 'sovereign citizen,' he is clearly advancing a common sovereign citizen theory that Public Law 73-10 and UCC 3-104 somehow allow him to satisfy his debt to Defendants by converting a demand for payment into a money order.").[12] Recall that the entire basis for the Complaint is the Defendants' failure to accept the Bill of Exchange as a "tender made in full satisfaction and dollar for dollar discharge" under "UCC §§ 3-104, 3-603, and 3-111, [and] Public Law 73-10," which the Defendants also (somehow) admitted constituted a crime. Compl. at 7, ¶¶ 20–

---

[11] *See also, e.g.*, *Minton v. Adams Cnty. Ct. C.P.*, 2024 WL 1651661, at *4 (S.D. Ohio Apr. 17, 2024), *report and recommendation adopted*, 2024 WL 2126491 (S.D. Ohio May 13, 2024) (collecting cases and holding that "[c]ourts across the country have repeatedly and emphatically held that sovereign-citizen claims of this kind 'are so completely devoid of merit that they do not give rise to a federal controversy'").

[12] This theory, also known as the "vapor money" theory, has been rightly and roundly pilloried by courts across our Circuit. *Farina v. Navy Fed. Credit Union*, 2024 WL 3333270, at *2 (N.D. Fla. June 28, 2024) (Cannon, Mag. J.) ("Courts have consistently found complaints based on the vapor money theory to be frivolous."), *report and recommendation adopted*, 2024 WL 3330586 (N.D. Fla. July 8, 2024) (Wetherell II, J.); *Brown v. Selene Fin. LP*, 2023 WL 3335060, at *4 (N.D. Ga. Apr. 10, 2023) ("District courts across the country—and Northern District of Georgia district courts particularly—have overwhelmingly rejected the vapor money theory."), *report and recommendation adopted*, 2023 WL 4996552 (N.D. Ga. June 1, 2023); *Price v. Lakeview Loan Servicing, LLC*, 2021 WL 1610097, at *3 (M.D. Fla. Apr. 26, 2021) (Steele, J.) ("Plaintiff's arguments mirror other litigants' attempts to disavow legal obligations based on the vapor money theory and as such, the Court finds [that] the Amended Complaint, to the extent it relies upon this theory, is 'utterly frivolous and lacks any legal foundation.'"), *aff'd*, 2022 WL 896816 (11th Cir. Mar. 28, 2022).

32. The Plaintiffs root all of their claims, including their references to the Sherman Act and RICO, in this frivolous sovereign-citizen theory. *See, e.g.*, Compl. ¶¶ 62 (tying the Sherman Act claim to the UCC § 3-104 "tender of payment"), ¶¶ 79–80 (alleging that the RICO predicates were the criminal acts to which the Defendants "admitted"). So, the entire Complaint is frivolous. *Accord Larkins*, 2020 WL 2744116, at *5.

In other words, the fact that the Plaintiffs mentioned the Sherman Act and the RICO statutes doesn't give us federal-question jurisdiction over the Complaint. "Litigants who simply cite federal statutes and say that their claims arise under federal law do not conjure federal-question jurisdiction[.]" *Ngola Mbandi v. Pangea Ventures LLC*, 2023 WL 4486703, at *2 (7th Cir. July 12, 2023), *cert. denied*, 144 S. Ct. 695 (2024); *see also Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Const. Co.*, 607 F.3d 1268, 1273 (11th Cir. 2010) ("[A] mere incantation that [a] cause of action involves a federal question is not always sufficient."). Put another way, the federal question supposedly presented here is whether the Defendants violated our antitrust and racketeering statutes by failing to accept the Bill of Exchange as payment for some debt—again, the Complaint doesn't say exactly w*hich* debt—and then "admitting" that they committed various frauds by not "rebutting" some claptrap UCC affidavit. There isn't an iota of "legal substance" to this question, *Southpark*, 565 F.2d at 342, which is another way of saying it's frivolous, *see, e.g.*, *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1007 (5th Cir. 2019) ("[J]urisdiction would still lie if the plaintiff presented a non-frivolous federal question. We find none. For example, the plaintiff asserts various antitrust violations, but fails to allege any colorable basis for them."); *Haxton v. State Farm Mut. Auto. Ins. Co. Bd. of Dirs.*, 2014 WL 3586550, at *5 (N.D. Fla. July 21, 2014) (Rodgers, J.) ("[I]nsofar as Plaintiff might seek[ ] to allege a civil RICO claim, relying on mail fraud as the predicate act, his allegations are insufficient to demonstrate federal question jurisdiction under the well-pleaded complaint rule. No federal question is presented on the face of the Second Amended Complaint because the allegations lack context and elaboration or any

16

factual support whatsoever connecting them to [conduct capable of giving rise to a claim]"); *see also Southpark*, 565 F.2d at 342 ("[W]e cannot avoid the conclusion that Southpark's claim is wholly insubstantial and frivolous. Southpark lost its property as a direct consequence of its own financial arrangements and tactical decisions, not because the City committed any act remotely resembling a taking.").[13]

We conclude, too, that the removal posture of this case dispels any presumption we might ordinarily make in favor of exercising our jurisdiction over these claims. In evaluating whether the "particular factual circumstances of a case give rise to removal jurisdiction, we [must] strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (cleaned up); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court . . . removal statutes are construed narrowly. [W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").[14] On removal, it's the Defendants'

---

[13] As to the obvious frivolousness of the RICO claim in particular, the Eleventh Circuit's recent decision in *Rubinstein v. Yehuda* is instructive. 38 F.4th 982 (11th Cir. 2022). There, even a badly pled RICO claim that at least identified distinct predicate acts and attached "exhibits supporting th[o]se allegations" still conferred subject-matter jurisdiction. *Id.* at 994–95. Here, the *only* facts in the Complaint come from (or are about) the Agreement and the Affidavits. The Complaint doesn't allege that the Defendants did *anything* other than "acquiesce" to those documents. According to the Plaintiffs, everything the Plaintiffs are suing about was established by those documents. *See, e.g.*, Plaintiffs' Motion to Expedite Summary Judgment [ECF No. 24] ¶¶ 3–4 (claiming that "there is no material dispute of fact" because "Defendants have individually and collectively admitted all statements and claims by tacit procuration," and that, as a result, all "issues" and "claims" are "settled as res judicata, stare decisis, and collateral estoppel").

[14] Moreover, because of the removal posture, our Circuit's rule of thumb about how to construe attacks on subject-matter jurisdiction, *see McGinnis*, 918 F.2d at 1494, simply doesn't apply. The Defendants don't and can't attack our federal-question jurisdiction. They *don't* attack it because they want us to order arbitration, and they *can't* attack it because they invoked it to remove the case in the first place.

burden to establish our jurisdiction. *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1217 (S.D. Fla. 2020) (Altman, J.) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). They chose to invoke our federal-question jurisdiction. But there's no non-frivolous federal question here.

*      *      *

Since nine of the Plaintiffs' "federal-question" counts advance no federal question at all—and because the other two "federal-question" claims are irredeemably insubstantial and frivolous—the Complaint fails, on its face, to invoke our subject-matter jurisdiction. Now, it's true that, if the Defendants had, say, invoked our *diversity* jurisdiction but failed to establish the parties' citizenship in the notice of removal, that would be the kind of "procedural, rather than jurisdictional, defect" for which a *sua sponte* remand would be inappropriate. *Corp. Mgt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1297 (11th Cir. 2009) (citing *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir. 1993)). Here, however, the Defendants removed the Complaint *only* because the Plaintiffs cite to federal statutes in connection with their nonsensical legal theories. As we've said, these federal statutes confer no subject-matter jurisdiction at all. And we needn't give the Defendants a second chance to carry their burden of identifying a federal question when there plainly isn't one in the underlying complaint. *See Mas Lab LLC v. iHealthcare, Inc.*, 2020 WL 1024823, at *3 (S.D. Fla. Mar. 3, 2020) (Bloom, J.) (remanding *sua sponte* after review of the record revealed no federal-question jurisdiction); *cf. Ruhlen v. Holiday Haven Homeowners, Inc.*, 28 F.4th 226, 228 (11th Cir. 2022) (denying permission to appeal under Class Action Fairness Act after district court *sua sponte* determined that federal-question jurisdiction no longer existed and remanded case to state court).

### III.    We Won't Exercise Supplemental Jurisdiction Over What's Left of the Complaint

Because we can't exercise jurisdiction over the putatively federal-law counts in the Complaint, we can't and won't exercise supplemental jurisdiction over the remaining state-law counts. The

purportedly federal claims we discussed in the preceding section "[we]re the only mechanism by which we [could] exercise original jurisdiction over this case." *Floyd v. Broward Cnty. Sheriff's Dep't*, 2019 WL 4059759, at *4 (S.D. Fla. Aug. 28, 2019) (Altman, J.). If there aren't any claims over which a district court has original jurisdiction, it may decline to exercise its supplemental jurisdiction over any remaining state-law claims. 28 U.S.C. § 1367(c)(3). "[C]onsiderations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) (establishing these factors). The power to hear cases via supplemental jurisdiction "need not be exercised in every case in which it is found to exist." *Gibbs*, 383 U.S. at 726. As the Supreme Court has said, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Ibid.* Obeying the Supreme Court's admonition, we decline to exercise our supplemental jurisdiction over the Plaintiffs' state-law claims (Counts 2 and 13–16). *See Barat v. Navy Fed. Credit Union*, 2024 WL 326445, at *6 (S.D. Fla. Jan. 29, 2024) (Altman, J.); *see also Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1292–93 (S.D. Fla. 2012) (Moreno, C.J.) ("[C]onsiderations of practicality and comity counsel that a state judge is best equipped to resolve [such] state claims." (cleaned up)).

## IV.    MacArthur-Brooks and Walker Are Barred from Representing the Trust

One last thing. "A trust, like a corporation, is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel." *J.J. Rissell, Allentown, PA Tr. v. Marchelos*, 976 F.3d 1233, 1235 (11th Cir. 2020) (internal quotation marks omitted). "[A] nonlawyer trustee has no authority to represent a trust in court." *Ibid.* That's a problem for the Trust here. The Complaint is signed by Steven MacArthur-Brooks and Kevin Walker, each of whom purports to be an "Attorney In Fact," Compl. at 1, 41—which is to say, not an actual attorney. And the docket lists the Plaintiffs as proceeding *pro se. See generally* Docket. So, the Trust (at least) isn't properly represented,

and any filings made on its behalf by MacArthur-Brooks and Walker are invalid. To avoid any ambiguity, we'll strike all filings made on behalf of the Trust by MacArthur-Brooks and Walker.[15]

*　　*　　*

We therefore **ORDER and ADJUDGE** as follows:

1. This action is **REMANDED** to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

2. All the Plaintiffs' filings are **STRICKEN** because they were filed by Steven MacArthur-Brooks and Kevin Walker, non-lawyers with no authority to represent the Trust in federal court. The Court will impose sanctions against MacArthur-Brooks and Walker if they continue to file frivolous documents in this case or purport to act on behalf of each other or the Trust.

3. We **DIRECT** the Clerk of Court to reject or decline to file all papers filed by Kevin Walker on behalf of any party other than himself. Should Walker obtain admission to the bar of any state, he may move for relief from this part of our Order.

4. This case shall remain **CLOSED**. All deadlines and hearings are **TERMINATED**, and any pending motions not **STRICKEN** are **DENIED as MOOT**.

---

[15] Even if we construed the Complaint as though it were filed only by MacArthur-Brooks proceeding *pro se*—ignoring that Walker also signed it—we'd reach the same conclusion. No private plaintiff could assert the claims we discussed in Section I of this Order, and Counts 5 and 10 are as frivolous as the rest of the Complaint. "Judges cannot and must not fill in the blanks for *pro se* litigants; they may only cut some linguistic slack in what is actually pled." *Floyd v. Rojas*, 2024 WL 4023141, at *1 (S.D. Fla. Aug. 30, 2024) (Altman, J.) (quoting *Hanninen v. Fedorovitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up)). To exercise jurisdiction over this action, we'd have to do more than fill in the blanks—we'd have to come up with a whole new complaint.

**DONE AND ORDERED** in the Southern District of Florida on January 3, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record